Welcome, and I will remind counsel that you each have two minutes of uninterrupted time to present your case before you should expect some questions from the court. With that, we will start with you, Mr. Boos. Good afternoon, your honors. May it please the court. My name is Matt Boos, and I represent the appellant, Tile Shop Holdings, Inc. The securities plaintiffs identified a class period beginning August 22, 2012, two days after the prior act date in Allied's exclusion. Allied has argued that the securities claims, which specify only post-August 20, 2012 omissions, allege and arise out of prior wrongful acts. Tile Shop should prevail in this case because there are no prior wrongful acts alleged by the securities plaintiffs. Now, there's a difference between prior acts and prior wrongful acts. There's absolutely nothing wrongful about a private company like TSLLC, before its business combination, participating in related family transactions. It's not uncommon, and it's not wrongful. Nor is there anything wrong with a public company engaging in related family transactions, as long as they are properly disclosed when there's a duty to do so. Related party transactions are not wrongful in and of themselves. Now, the district court made some very plain errors in which we described in our briefing. But I'm going to focus on why we should win this case, beginning with the fact that prior wrongful acts are not the basis on which Tile Shop was sued by the securities plaintiffs. In analyzing whether something meets the definition of wrongful act under the policy, the court cannot divorce the coverage analysis from the text of the policy. Allied has pressed a multitude of arguments that move the focus away from its burden to show what is a wrongful act, when did it occur, and was it carried out in the capacity of an employee or executive of an organization. Focusing on these threshold questions makes it clear that the plaintiffs alleged no prior acts that meet the definition of wrongful act. If we stay true to the text of the policy, Mr. Nishi's activities, for example, before August 21st are not wrongful acts because they were not performed in his capacity as an employee of an organization. In fact, the only potential wrongful act is the S4 omission in the prior period. But this act was not alleged by the plaintiffs in our case. In fact, it was intentionally removed from the amended complaint by the securities plaintiffs. And Allied is not permitted to re-litigate or re-plead the underlying case to try to establish a prior wrongful act. As this court explained in the Bethel versus Darwin case, which was cited by Allied, the court could not determine coverage on the basis of claims that could have been made but were not. Importantly, the post-August 20th omissions alleged by plaintiffs stand completely independently of any prior act mentioned by Allied or the district court. Here the Minnesota Supreme Court would rule that Allied has not met its to prove that its exclusion applies in this case. Now, if I want to talk about applying the definition of wrongful act in this case, Allied has incorrectly suggested that when someone becomes an employee or executive of an organization does not matter. But it does matter. The wrongful act definition requires that the act be carried out by an employee or executive in his or her capacity as such. And that's addendum 19. The act occurs when the person is not yet an employee or executive of the named insured, which here is Tile Shop Holdings. The act is not carried out in the capacity of an employee or executive of the organization. This is clear from the plain language of the wrongful act definition. It's also consistent with the scope of subsidiary coverage provision found at appendix 33, paragraph 10, which affords coverage only for wrongful acts committed during the time that an insured person meets the definition of insured person. So then what would this exclusion apply to? When would this happen? If it can only begin when the policy begins here, when the company is created, what was the purpose of the provision? Well, I think one example, if we go back to the S4 omission that was removed from the amended complaint, those omissions allegedly, well, nobody alleged it, but those omissions took place in the weeks prior to going public on August 20. And had the securities plaintiffs in this case maintained that claim and said that you violated rules or laws related to the S4 omission, that would be one example of where the exclusion could apply and there would be a prior wrongful act. But here, that was not alleged. It was pulled out. Did the district court find that? Did she found that at least Mr. Rucker made, could, I guess, engaged in a wrongful act in June and July, June and or July prior to the August? Yeah, it appeared that the sole wrongful act identified, prior wrongful act identified by the court was the S4 omission by Mr. Rucker in that prior period. But again, that was removed from the amended complaint. So your position is if that were a part of this, of the CAC, the complaint that that issue here, then that would be, that would fall under the definition of a wrongful act and would fall within the exclusion? That's one possibility that it could. Yes. But again, it doesn't here because it was not alleged. So it's not covered by the alleged language in which is that, how can it arise out of something that was found to be so insignificant by the securities plaintiffs that they purposely took it out of their complaint? What the securities plaintiff's complaint arose out of were the 10 very specific omissions that they listed in their table of contents and discussed in their complaint, beginning with the press release on August 21st of 2012, when the company representatives got up, stood up and said, we are going to have, we're going to have growth. We're going to have significant growth. And the plaintiff's alleged, well, wait, you omitted at that time, right then and there, you had a duty to say more. You had a duty to say that there were related family transactions that could impact your prediction that you're going to have significant growth. That duty did not arise until that very day, August 21st. I want to correct two misstatements, I think in the court's underlying order that I think are important to this definitional discussion. At page 12 of the addendum, the district court said that TSLLC was under Rutgers management control and so falls within the definition of the subsidiary under the policy. That's wrong and I'll explain why that's wrong in a minute. Secondly, the court said TSLLC became a subsidiary days before Tile Shop became publicly created. And that's just a misstatement of the record. I don't even think there's a dispute between the parties that TSLLC did not become a subsidiary until the closing of the business combination on August 21st. So it's absolutely incorrect that TSLLC was a subsidiary at any time before the closing of the business combination. And the reliance on those statements, the court really cannot rely on those statements as a matter. And this is important because pre-August 20th actions of TSLLC are not wrongful acts. And why? Because they weren't carried out by an employee or executive of an organization. And an organization includes subsidiaries. So if you were a subsidiary of the named entity, Tile Shop Holdings, prior to August 20th, that would be a different story. But in fact, there should be no dispute that TSLLC was not a subsidiary until after the closing of the business combination. Your argument thus far has focused on what's a wrongful act. Much of your briefing was on which of the exclusions applies and whether the district court erred in what you call kind of combining them. What is your position? Is it your position that it's, that I guess this is a two-part question, that it is the exclusion in Allied's excess policy? And if that's true, why doesn't it, what is wrong if you just, why doesn't that exclusion apply here? Okay. The answer to the first part of your question is yes. We believe that the Allied policy absolutely, the intent of the parties was not to follow form to AIG's prior act exclusion. And the court misstepped, I think it's acknowledged in reading a prior and pending litigation paragraph. It's true that the Allied policy expressly follows form to a prior and pending litigation exclusion in AIG's policy, but there is no such paragraph expressly following form to their prior acts exclusion. There are a host of other reasons that we briefed as to why there's no following form to the prior act exclusion here. Not the least of which was the admission by their representative, by the fact that they expressly added such a document in the subsequent policy year where they did expressly follow form. That's just proof that they did not intend to expressly follow form in the relevant policy year of 2013. So then getting to the other part of your question, your honor, is why does an Allied policy, why is there no, why does it not bar coverage here? It doesn't bar coverage here because Allied is relying on cases that have much broader exclusionary language, namely the in any way involving language, like the Foster case, like the SRC case. And those cases interpreted that in any way involving language, which Allied chose to not put in its policy. Those other cases interpreted that language broad enough to bar coverage. But in our case, there is no such language. And so what you have to look at is the prior wrongful acts, of which we say there are none, but assuming there was one, does the prior wrongful act, is it liability creating conduct? And that's from several cases that talk about the liability creating conduct. And here, not only are there no prior wrongful acts, but even if you assumed that the Rucker signature on a document in June or July was a liability creating conduct, it's not even mentioned by the securities plaintiffs in their complaint. Had the securities plaintiffs mentioned that and talked about that and based a claim, a securities claim on that, that could be a different story. But they removed that from their complaint. The district court focused on arising out of, saying that under Minnesota, that's pretty broad. Yeah. The district court, well, the district court focused on the related wrongful acts language in the AIG policy, and then also combined it with the Allied policy. The Allied policies arising out of language, if you look at the Roush Minnesota Supreme Court case, it really gets into how far do you go with arising out of, right? Yes, it's broad, but keep in mind, this is a context where Minnesota courts also construe narrowly any exclusions that are intended to bar coverage. So you sort of have clashing policies here. But the Roush case also says, look, it's got to be a significant, it's got to be at least a but-for connection, a but-for causation, and it's got to be something significant and especially significant are the words that the Roush court uses. And here, there's nothing especially significant or really even relevant about the S4 omission in the prior period and the actual claims and from Foster, which relied on the in any way involving language, in addition to interrelated wrongful acts language to find no coverage in that case. That's language that Allied chose not to include in its case. With that, Your Honor, am I into my three minute time? Okay, then I'll reserve for a while. All right, you may. Mr. Hart. Thank you, Your Honor. Is audio working well? I think we all can hear you. Thank you. May it please the court. My name is Bill Hart and I represent Allied World in this case. And what I'd like to do during my time today is I'd like to focus on the same pathway to a triggering of exclusion of coverage as the district court did in its order below. And so, what I have in mind as a roadmap for that are the followings. My remarks will rely on the prior acts exclusion in the Allied policy. They will focus on Mr. Rucker's wrongful acts and his capacity as CEO and sole board member of Tileshop Holdings. And it will demonstrate the ways in which the underlying actions were claims alleging arising out of based upon or attributable to those wrongful acts. So, for today, the bottom line for my presentation is this. In his capacity as an attorney, Rucker committed any breach of duty before August 20, 2012, and the two underlying actions are claims alleging arising out of based upon or attributable to those wrongful acts. So, I would like to turn then to the language of the Allied exclusion. And I want to point out three of the terms that are used there. And those are the defined term claim, and the undefined term alleging, and the undefined term any. I'll start with the defined term claim. And I'd like to read from the policy, the definition is defined. It's a civil proceeding for a monetary relief which is commenced by service of a complaint or similar pleading. It does not say that a claim is a complaint. And that is what the Tileshop's argument has entirely been based upon today. Claim is defined as the entire underlying action, a civil proceeding commenced by a complaint. Tileshop is arguing that the claim is the complaint, and that's just not what the policy says. So, that's first. Second, the undefined term alleging means, in its plain, ordinary, and popular meaning, it means asserting as true. And so, we're looking for an assertion of truth, an allegation, in the underlying action. And the term any means one, no matter what one. And so, when we look at the exclusion as applying to any wrongful act, we're looking for one. And we're looking for any assertion of truth of a wrongful act prior to August 20th, 2012, in any, in either of the underlying actions, well, in both of them, because we're, they're both excluded. So, let's look for one on a wrongful act. And we find that, as was discussed somewhat in opening remark, counsel talked about the filing of the S4 registration statements. Those were the wrongful acts that the district court relied on. And my remarks rely on those in July of 2012, and they became effective on August 2nd, 2012. And all of those things are prior to August 20th. And so, those are the wrongful acts that my remarks are focusing on today. And then I will go to paragraph 5 of the consolidated amended complaint in the securities action. And I will quote, Tileshop's failure to disclose these related party transactions and relationships violate item 404 of SEC regulation S through K. And then it goes on to cite different rules and state those disclosures were required under those rules. Now, those rules that were cited in paragraph 5 of the consolidated underlying complaint govern related party transactions. They were not disclosed during in the July, the June and July 2012 S4 statements. And those, that's what paragraph 5 says. That that was wrongful. That it violated those rules because you failed to disclose those relationships. And so, the idea, the very idea that these I'm sorry, any wrongful act prior to August 20th is just simply belied by the record. So, then we look at other items. You know, Tileshop's argument would look anything beyond complaint. But, you know, those kinds of arguments apply in cases that are governed by duties to defend in occurrence based policies where you look to find whether there's a duty to defend by looking at the four corners of the complaint. That's not what this policy is and that's not what this policy says. It defines claim as a proceeding commenced by a complaint, not a complaint. And so, we look at data and I'd like to just point out a couple of that are very important from the underlying court's order which was issued, of course, by the same judge who sat and issued the order in this case where the court said that the plaintiff had come forward with facts. So, the plaintiff had asserted as true facts that give rise to a was owned and controlled by his brother-in-law who was also a Tileshop purchasing supervisor. And so, that's the order of the underlying court saying in its decision that the plaintiff in the underlying action had come forward asserting as true that Rucker knew this and his duty was to disclose it and it was to disclose it in every SEC filing of which he put his name on, on behalf of T.S. Holdings, including the three of them that occurred before the prior absence. Those are the things that this is right on in its order and it's right on the mark in relying on those because that's what the policy says is excluded. The second, so many other things that we've outlined in our brief and I obviously can't go through them all. So, I want to move on to another point which is the point about attributable to. That was a, I'm focusing there on alleging. Here we're going to attributable to and that's also an undefined term and the term means traceable to. Attributable to means traceable to and the reason that's important is because today Towshop is arguing that there were just ten specific statements of allegation and they were all of wrongful acts occurring after the policy incepted and especially in preparation for the second offering in around November 2012. And so, the argument goes this is just, that's the only thing that this case is about. And so, I want to point out that the wrongful acts that were specifically alleged with regard to the second offering are subject to this statement, this testimony by underwriters about the S1 forms, the SEC forms that were filed in conjunction with the second offering. And here's what they said. They said they reviewed and relied on the diligence undertaken in June and July of 2012 during the 2012 business combination and then built off that information to conduct a thorough diligence process for the December 2012 offering. Now, what they're saying is they looked at the disclosures that were made in the S4 filings in the summer of 2012 and then they built off them from there. And so, it's directly traceable to the omissions that came in November and December of 2012 are directly traceable by the very testimony of the underwriters to the wrongful acts that were committed prior to August 20th. So, you focused on the phrase attributable to. Is your position that even if the exclusion from the excess policy stands alone as what applies that this is still not covered? Absolutely. That's exactly right, Your Honor. That's why I've said that I'm relying just on and this is what the district court emphasized, just relying on that and just talking about Rucker in his capacity as the CEO and board member of Tile Shop Holdings. Because you remember, counsel argued quite extensively just now that, well, none of these other acts by Tile Shop LLC and Nishi and all that, those don't matter because of other things that Tile Shop claims don't allow the policy to be triggered. But there is no dispute that Rucker in his capacity as the named entity's CEO and sole board member signed those SEC public filings in the summer of 2012 and that they are wrongful acts. I have quoted from paragraph 5 of the consolidated amended complaint saying that they specifically allege in there that the filings are in violation of item 404. Item 404 specifically governs related party transactions and the duty to disclose them in any SEC public filing. And so that's why none of the other arguments that they're making matter. So do you think that the district court improperly combined the two exclusions? You're saying that you believe that this should be affirmed even if just applying the excess policies exclusion. But putting that aside, do you think that the district court improperly combined the two exclusions, taking language from both of them? There's no fair reading of that order that would support that argument. What the district court did was it looked at the two terms that are similar in the two arising out of, it discussed what those two terms mean. And it essentially stated that those two terms are essentially a wash, that it doesn't matter which exclusion you look at because they both say that. And then it went on to say that the allied exclusion is broader because it includes these other terms, arising out of, based upon, attributable to, etc. And then it went through and it analyzed the policy under those terms, the allied excess policy. And it ruled as a matter of law that it excludes the coverage for the underlying actions. And that was absolutely correct in doing that. Nothing wrong with that analysis. And along the way, the court also said that the SEC filings that we've been talking about from the summer of 2012 were also qualified as the first such same or related prior act under the AIG policy. So the court found both exclusions triggered, but it didn't do it because it combined them. It looked at them separately. It applied their terms separately. And under the undisputed facts, it was absolutely correct in applying both of them to exclude coverage. But AIG actually came to its own independent conclusion that it wasn't excluded, correct? Yeah. And of course, we don't know and the court doesn't care what business reasons AIG might have had for how it handled its decision, coverage decisions. We only look, it's a question of law, we look at it. We look at it based on the terms of the policy and the law. And we certainly wouldn't let a business decision internal to AIG to decide how the policy should be applied in a court of law. And so in my last 40 seconds here, I would like to add one thing about the traceable two, because I did quote from the underwriters, and I want to quote from the disclosure committee that looked at these things in 2012. And here's what they said in connection with the second offering. The disclosure committee for Towshop Holdings said this, the disclosures in the form 10Q, which is filed in the fall of 2012, had been edited to conform with the presentations included in the forms S4 that was filed with the SEC in August 2012. And so when we're talking about the term attributable to, traceable to, they conformed their disclosures to the wrongful disclosures that occurred in the summer of 2012, and that obviously makes the second action attributable to the first, to the prior wrongful acts. I see that my time is up, Your Honor. Thank you, Mr. Hart. And Mr. Booth, I believe you have some rebuttal. Thank you, Your Honor. There is no causation, Your Honor, between the underlying securities claims and the S4 omission that they're talking about related to Mr. Rucker. It's not alleged or mentioned in the complaint. If you go to paragraph 5, there is no mention of omissions in the S4 document. In fact, there's a definition of registration statements which refers to the secondary offerings in December of 2012 and June of 2013. There's simply no mention of those S4 omissions in the complaint. The S4 situation, the S4 omissions could never have happened, and the same exact claims would have been brought by these securities plaintiffs. There's simply no connection. There's no but-for causation. One didn't cause the other. One did not impact the other. An S4 is something prepared for a different audience. It was prepared for the JWC acquisition shareholders. It was not prepared for the securities plaintiffs that filed this lawsuit. It was prepared in connection with a business combination, a merger that occurred on August 20th. So it's prepared to a different audience at a different time. It's a different filing. There's simply no causation. Again, the related party transactions themselves are not wrongful acts, and the district court erred in holding that the claims arose out of related party transactions. She didn't say they arose out of wrongful acts. She didn't analyze whether they arose out of wrongful acts. She said they arose out of related party transactions. She was equating or the judge was equating related party transactions with wrongful acts, which is not appropriate. Again, they have identified one single thing that they believe is a wrongful act. And so when really pressed, they can't come up with anything else. And as we said, there's no and the S-4 omissions. There's no case law saying, by the way, there's no case law saying that attributable to is any broader than arising out of. So the real standard we're looking at is arising out of. Thank you, Your Honor. Thank you to both counsel. We'll take the matter under advisement and issue an opinion in due course. Thank you both. Madam Deputy, does that